UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THERESA FORD<br>86 South Hickory Road<br>Chillicothe, Ohio  45601 | : <br> : <br> : <br> : | Case No. |
| and | : <br> : | **PLAINTIFFS' CLASS ACTION<br>COMPLAINT** |
| RHONDA LEESON<br>2806 Patton Hill Road, Lot 1<br>Chillicothe, Ohio  45601 | : <br> : <br> : | **JURY DEMAND ENDORSED<br>HEREON** |
| On behalf of themselves, and all others<br>similarly situated | : <br> : <br> : | |
| Plaintiffs, | : <br> : | |
| v. | : <br> : <br> : | |
| P.H. GLATFELTER COMPANY<br>96 South George Street, Suite 500<br>York, Pennsylvania  17401-1434 | : <br> : <br> : <br> : | |
| <u>Also serve:</u><br>c/o CSC-Lawyers Incorporating Service<br>50 W. Broad Street, Suite 1800<br>Columbus, Ohio 43215 | : <br> : <br> : <br> : | |
| Defendant. | : <br> : | |

---

## <u>INTRODUCTION</u>

1.     Plaintiffs bring these non-prejudicially dismissed class-action claims against Defendant P.H. Glatfelter Company ("Defendant"). Defendant owns and operates a paper mill facility, which releases noxious odors and air particulates into, and onto, Plaintiffs' property, causing property damage through trespass by air particulates, negligence, gross negligence, and nuisance.

15696317.1

2.      As residents of the Chillicothe, Ohio, community, Plaintiffs do not want to close the paper mill facility or stop Defendant's business. Rather, Plaintiffs seek to stop Defendant's current practices that result in the release of the noxious odors and air particulates onto Plaintiffs' property and to accomplish a change in Defendant's practices to ensure Plaintiffs' property are not unreasonably exposed to such noxious odors and air particulates. Accordingly, Plaintiffs seek an Order holding that entrance of the aforementioned noxious odors and air particulates upon Plaintiffs' property constitutes a nuisance. Plaintiffs also seek compensatory damages caused as a result of the noxious odors and air particulates, among other relief sought.

## PARTIES

3.      At all times relevant hereto, Plaintiff Teresa Ford has resided at 86 South Hickory Road, in the City of Chillicothe, County of Ross, State of Ohio.

4.      At all times relevant hereto, Plaintiff Rhonda Leeson has resided at 2806 Patton Hill Road, Lot 1, in the City of Chillicothe, County of Ross, State of Ohio.

5.      Defendant P.H. Glatfelter Company is a Pennsylvania Corporation with its principal place of business located at 96 South George Street, York, Pennsylvania 17401.

6.      Defendant, its agents, and its predecessors constructed, operate, and maintain, its paper mill facility located at 232 East 8th Street, in the City of Chillicothe, County of Ross, State of Ohio.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there are 100 or more Class Members and

the aggregate amount in controversy exceeds Five Million Dollars ($5,000,000.00) exclusive of interest and costs. Additionally, Class Members are citizens of a state different from the corporate domicile of Defendant.

8. This case is properly maintainable as a class action pursuant to, and in accordance with, Rule 23(a) of the Federal Rules of Civil Procedure in that:

      a. The Class, which includes an unknown number of persons but certainly more than 100, is so numerous that joinder of all members is impractical;

      b. There are substantial questions of law and fact common to the Class including those set forth in greater particularity herein;

      c. Questions of law and fact enumerated below, which are all common to the Class, predominate over any questions of law or fact affecting only individual members of the Class;

      d. A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

      e. The relief sought in this class action will effectively and efficiently provide relief to all members of the Class; and,

      f. There are no unusual difficulties foreseen in the management of this class action.

9. The Defendant, at all relevant times herein, conducted substantial business in this district, many of the violations occurred in this district, and many of the acts and transactions alleged in this Complaint occurred in this district.

10. The Court has personal jurisdiction over Defendant, who has at least

15696317.1

minimum contacts with the State of Ohio because the Defendant conducts business in Ohio.

11.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

12.     Ohio's substantive laws may be constitutionally applied to the claims of Plaintiffs and the Class under the Due Process Clause, 14th Amendment, Section 1, and the Full Faith and Credit Clause, Article IV, Section 1, of the U.S. Constitution. Ohio has a significant contact, or significant aggregation of contacts, to Plaintiffs' claims, thereby creating state interests that ensure that the choice of Ohio state law is not arbitrary or unfair.

13.     Accordingly, the application of Ohio's laws to Plaintiffs and proposed Class Members is appropriate under Ohio's choice of law rules because Ohio has significant contacts to Plaintiffs' claims and all members of the proposed Class, and Ohio has a greater interest in applying its laws here than any other State.

14.     Venue in the United States District Court for the Southern District of Ohio, Eastern Division, is proper because Defendant transacts business within this District and a substantial part of the events giving rise to the claims at issue in this Complaint occurred in this District.

## **GENERAL ALLEGATIONS**

15.     Plaintiffs' property has been and continues to be physically invaded by noxious odors and air particulates.

16.     The noxious odors and air particulates, which entered and settled in and on Plaintiffs' property, originated from Defendant's facility located at 232 East 8th Street,

in the City of Chillicothe, in the County of Ross, State of Ohio (hereinafter the "paper mill" or "facility").

17.     Defendant's facility is a 1200 employee, 800 acre, pulp and paper mill that manufactures carbonless paper and book paper.  The paper mill operates four (4) paper machines producing uncoated and carbonless paper.

18.     Defendant's operation includes a bleached kraft pulp mill which supplies part of the raw materials to its paper machines.  The pulping process consists of the following:

      a.     wood chips and white liquor (sodium hydroxide and sodium sulfide) are cooked in digesters (large pressure vessels) producing a mixture of pulp, sodium salts and various organics;

      b.     the pulp mixture is screened to separate out unusable wood fines; and

      c.     the "chemiwasher" washes the pulp mixture with reclaimed condensate, removing liquor (weak black liquor) from the pulp;

19.     The pulp is bleached and the weak black liquor is ready for recovery or reuse in the pulping process as white liquor.  Bleaching is done using chlorine dioxide which is manufactured on-site.  Weak black liquor undergoes the following recovery steps:

      a.     the liquor is concentrated in evaporators (from 13% to 70% solids);

      b.     this stronger black liquor is burned in a recovery furnace, creating smelt;

      c.     the smelt is dissolved in water (called green liquor); and

5

     d.    green liquor is causticized with lime to create white liquor which is settled and then reused in the pulping process.

20.    The emissions points at Defendant's facility include, but are not limited to:

     a.    six (6) steam generating boilers;

     b.    two (2) natural gas package boilers;

     c.    one (1) recovery boiler firing spent pulping liquor;

     d.    one (1) boiler firing biomass; and

     e.    two (2) power boilers firing pulverized coal.

21.    The Ohio Environmental Protection Agency ("OH EPA") has received numerous complaints from surrounding residents concerning the invasion of Defendant's noxious odors and air particulates onto their property attributed to Defendant's facility. In January, 2015 alone, the OH EPA received a total of 21 complaints from adjacent residents regarding Defendant's emissions of noxious odors and air particulates that invade their property. Complaints from surrounding residents include, but are not limited to the following:

     a.    A December 3, 2012 Complaint from a resident regarding black particulates on his home;

     b.    A December 1, 2013 Complaint Investigation Form indicating that "strong odors are smothering the city of Chillicothe";

     c.    A November 3, 2014 Complaint where one resident noted "black grease" on the outside of her house that she is forced to clean on intermittent and reoccurring dates;

     d.    An August 31, 2014 Complaint where a resident stated that the

odors coming from Defendant's Facility are so unbearable that "you don't want to go outside or have the windows up";

e. A September 10, 2014 a resident described the odors coming from Defendant's facility as "unbearable", "nauseating", and woke her up in the middle of the night;

f. A December 23, 2014 Complaint where a resident described Defendant's emissions as "a strong sulfur odor" so unbearable that it is waking her up in the middle of the night; and

g. Other OH EPA Complaints logged between December 2014 through January 2015, with descriptions of the odors emitted from Defendant's Facility that include, but are not limited to: a "severe odor", a "very bad odor", and an "ungodly, horrible stench."

22. Plaintiffs' counsel has been contacted by over 130 surrounding residents concerning the invasion of Defendant's noxious odors and air particulates onto their property attributed to Defendant's facility.

23. In her "*Data Sheet*" submitted to Plaintiffs' counsel, Plaintiff Teresa Ford describes Defendant's emissions as "the worst smell" she has "ever smelled" and that it will "literally make [her] gag." She further states that to avoid the odors she must keep her windows and doors closed and that the odors prevent her from going outside. She also explains that "fallout or film" gets on her cars and eats away the paint. Plaintiff Rhonda Leeson explains in her "*Data Sheet*" that the odors are so strong that her family cannot open their windows or enjoy outside activities. She also explains that her family car's windshields are "covered with black dust."

7

24.    "*Data Sheets*" submitted by other residents reveal similar experiences. For example, one resident describes Defendant's odors as "very strong and nasty" and that she is unable to "stay outside [or] clean [her] yard."  Another resident describes "fine dusting on [his] vehicle" and "fine dusting on [his] patio furniture and house."  This resident also states that Defendant's emissions create a "stench so strong you don't want to open your door or windows."  Yet another resident describes Defendant's emissions as "rotten sauerkraut or eggs odor and gray/black ash type flakes or powder fall out."  This resident also states an inability to "sit on their front porch without wiping ash off furniture" and "frequent washing [of their] vinyl siding on [their] house and porch."

25.    Defendant's Facility has a well-documented history of failing to control its own emissions including, but not limited to:

a.    An August 7, 2009 OH EPA Emergency Response Report indicating "on again off again release of non-condensable gases into the air" caused by a venting of Defendant's Pollution Control Collection System "at three specific times";

b.    An August 9, 2009 OH EPA Emergency Response Report of excessive emissions due to equipment problems;

c.    A  February 19, 2010 Notice of Violation served on Defendant by the OH EPA for exceeding the allowable emission rates in its Title V Permit;

d.    A November 26, 2010 OH EPA Emergency Response Report of "an opacity violation due to equipment problems";

8

e.  A June 3, 2012 OH EPA Emergency Response Report indicating Defendant's Pollution Control Collection System was "venting" causing the release of odors into the atmosphere;

f.  A September 11, 2014 Notice of Violation served on Defendant by the OH EPA for exceeding emissions limits when burning tire derived fuel;

g.  A October 31, 2014 Emergency Response Report that Defendant's facility released non-condensable gases into the air due to failure of Defendant's Lime Kiln; and

h.  A February 4, 2015 Notice of Violation served on Defendant by the OH EPA for malfunctions on three separate occasions: (1) October 31, 2014; (2) December 16, 2014; and (3) January 7-8, 2015. On these dates Defendant's emissions exceeded the allowable amounts. As a result, the OH EPA classified these malfunctions as causing "a public nuisance."

26.  Defendant, its predecessors and agents, either constructed or directed the construction of the facility and exercised control and ownership over the facility.

27.  The invasion of Plaintiffs' property by noxious odors and air particulates has interfered with Plaintiffs' use and enjoyment of their property, resulting in damages in excess of $5,000,000.00.

28.  Defendant intentionally, recklessly, willfully, wantonly, maliciously, grossly, and negligently failed to properly construct, maintain, and operate its facility, and caused the invasion of Plaintiffs' property by noxious odors and air particulates on

9

intermittent and reoccurring dates.

29.     Defendant failed to install and maintain adequate technology to properly control its emissions of noxious odors and air particulates onto Plaintiffs' property.  OH EPA Emergency Response Reports indicate such failures, include, but are not limited to:

        a.     failures of Defendant's pollution control technology to limit emissions from its Lime Kiln;

        b.     inadequate installation, operation, and maintenance of Defendant's emissions units to properly control the release of non–condensable gases (NCG's); and

        c.     various equipment failures of Defendant's emissions units.

30.     OH EPA Complaint Investigation Reports also indicate failures of Defendant's Evaporator System and Low Volume High Concentration System to reduce the concentration levels of its emissions into the atmosphere.

<u>**CLASS ALLEGATIONS**</u>

**A.     Definition of the Class**

31.     Plaintiffs bring this action individually and on behalf of all persons as the Court may determine to be appropriate for class certification, pursuant to Federal Rule of Civil Procedure 23. Plaintiffs seek to represent a Class of persons preliminarily defined as:

> **All owner/occupants and renters of residential property residing within one and one-half (1.5) miles of the facility's property boundary.**

10

The definitional boundary is subject to modification as discovery will disclose the location of all Class Members.  Plaintiffs reserve the right to propose one or more sub-classes if discovery reveals that such subclasses are appropriate.

**B.    Numerosity**

32.    Plaintiffs' counsel has already been contacted by over 130 residents seeking representation in this matter.  The Class consists of hundreds if not thousands more.  Thus, the Class is so numerous that joinder is impracticable.

**C.    Commonality**

33.    Numerous common questions of law and fact predominate over any individual questions affecting Class Members, including, but not limited to the following:

  a.    whether and how Defendant intentionally, recklessly, willfully, wantonly, maliciously, grossly, and negligently, failed to construct, maintain, and operate the facility;

  b.    whether Defendant owed any duties to Plaintiffs and Class Members;

  c.    which duties Defendant owed to Plaintiffs and Class Members;

  d.    which steps Defendant has and has not taken in order to control the release of noxious odors and air particulates through the construction, maintenance and operation of its facility;

  e.    whether, and to what extent, the facility's noxious odors and air particulates were dispersed over the Class area;

  f.    whether it was reasonably foreseeable that Defendant's failure to properly construct, maintain, and operate the facility would result in

11

an invasion of Plaintiffs' property interests;

g.      whether the degree of harm suffered by Plaintiffs and the Class constitutes a substantial annoyance or interference; and

h.      the proper measure of damages incurred by Plaintiffs and the Class.

**D.      Typicality**

34.      Plaintiffs have the same interests in this matter as all the Class Members and their claims are typical of all members of the Class. If brought and prosecuted individually, the claims of each Class Member would require proof of many of the same material and substantive facts, utilize the same complex evidence including expert testimony, rely upon the same legal theories and seek the same type of relief.

35.      The claims of Plaintiffs and the other Class Members have a common cause and their damages are of the same type. The claims originate from the same failure of the Defendant to properly construct, maintain and operate the facility.

36.      All Class Members have suffered injury in fact as a result of the invasion of their property by Defendant's release of noxious odors and air particulates, causing damage to Plaintiffs' and the Class Members' property.

**E.      Adequacy of Representation**

37.      Plaintiffs' claims are sufficiently aligned with the interests of the absent Class Members to ensure that the Class claims will be prosecuted with diligence and care by Plaintiffs as representatives of the Class. Plaintiffs will fairly and adequately represent the interests of the Class and do not have interests adverse to the Class.

38.      Plaintiffs have retained the services of counsel who are experienced in

12

complex class action litigation and in particular class actions stemming from invasions of private property by industrial emissions. Plaintiffs' counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent Plaintiffs and all absent Class Members.

**F.    Class Treatment Is the Superior Method of Adjudication**

39.    A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

> a.    Individual claims by the Class Members would be impracticable as the costs of pursuit would far exceed what any one Class Member has at stake;
>
> b.    Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class Members are unlikely to have an interest in separately prosecuting and controlling individual actions;
>
> c.    The concentration of litigation of these claims in one forum will achieve efficiency and promote judicial economy; and
>
> d.    The proposed class action is manageable.

40.    The prosecution of separate actions by or against individual Class Members would create the risk of (i) inconsistent or varying adjudications with respect to individual Class Members, which could establish incompatible standards of conduct for the party opposing the Class; and/or (ii) adjudications with respect to individual Class Members, which would, as a practical  matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to

protect their interests.

41.    Defendant has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

42.    Notice can be provided to members of the Class by regular U.S. Mail.

**COUNT ONE**
**TRESPASS BY AIR PARTICULATES**

43.    Plaintiffs restate the allegations set forth in all previous paragraphs of this Complaint as if fully rewritten herein.

44.    Defendant intentionally, recklessly, willfully, wantonly, maliciously, grossly, and negligently failed to construct, maintain, and/or operate the paper mill, which caused the invasion of Plaintiffs' properties by air particulates on intermittent and reoccurring dates.

45.    As a direct and proximate result of the foregoing conduct of Defendant, air particulates accumulated, entered, settled on, and physically invaded Plaintiffs' properties.

46.    Upon information and belief the air particulates that accumulated, entered, settled on, and physically invaded Plaintiffs' properties are of the same chemical composition as that emitted by Defendant's facility.

47.    It was reasonably foreseeable that Defendant's failure to properly construct, maintain, and/or operate the paper mill could result in an invasion of Plaintiffs' possessory interests by air particulates.

48.    As a further direct and proximate result of the foregoing conduct of Defendant, Plaintiffs suffered substantial damages and substantial interference to their

15696317.1

properties as alleged herein.  These substantial damages and interferences include, but are not limited to:

      a.    costs and expenses incurred for cleaning, scrubbing, and washing air particulates off of Plaintiffs' homes, vehicles, furniture, patios, porches, and other real and personal property;

      b.    physical damages to Plaintiffs' homes, vehicles, furniture, patios, porches, and other real and personal property; and

      c.    loss of use and inability to enjoy the outside areas of Plaintiffs' property due to the invasion of Plaintiffs' residences by air particulates, such as the inability to invite guests to Plaintiffs' residences due to the embarrassment and annoyance of the noxious odors and air particulates that invade Plaintiffs' property, inability to open up doors or windows, inability to sit on front porch or outdoor patios, and inability to entertain guests outdoors.

49.    The air particulates, which entered, settled onto, and physically invaded Plaintiffs' properties interfered with Plaintiffs' interests in the exclusive possession of their respective land and properties and constituted a trespass upon Plaintiffs' properties.  Plaintiffs have exclusively possessed their property during the time Defendant's trespass by air particulates has occurred.  *(See paragraphs 24-25).*

50.    Plaintiffs did not consent for air particulates to physically invade their land and property.

51.    Defendant's actions, which resulted in the trespass upon Plaintiffs' land and property were, and continue to be, intentional, willful, malicious, and made with a

conscious disregard for the rights and safety of Plaintiffs, entitling Plaintiffs to compensatory relief.

### COUNT TWO
### <u>NUISANCE</u>

52. Plaintiffs restate the allegations set forth in all previous paragraphs of this Complaint as if fully rewritten herein.

53. The noxious odors and air particulates, which entered and settled in and on Plaintiffs' property, originated from the paper mill constructed, maintained, and/or operated, by Defendant.

54. By failing to reasonably repair and/or maintain and/or operate its facility, Defendant has negligently created an unreasonable risk of harm by causing the invasion of Plaintiffs' property by noxious odors and air particulates. These failures to reasonably repair and/or maintain and/or operate its facility include, but are not limited to:

      a.     failures of Defendant's pollution control technology to limit emissions from its Lime Kiln;

      b.     inadequate installation, operation, and maintenance of Defendant's emission units to properly control the release of non–condensable gases (NCG's);

      c.     various equipment failures of Defendant's emission units; and

      d.     failures of Defendant's Evaporator System and Low Volume High Concentration System to reduce the concentration levels of its emissions.

55. As a direct and proximate result of the foregoing conduct of Defendant,

Plaintiffs suffered damages to their property as previously alleged herein.

56. Plaintiffs did not consent for noxious odors and air particulates to enter and settle upon their property.

57. By causing noxious odors and air particulates accumulated and controlled by Defendant to physically invade Plaintiffs' land and property, Defendant maliciously, recklessly, willfully, wantonly, grossly and with a conscious disregard for the rights and safety of Plaintiffs created a nuisance which substantially and unreasonably interfered with Plaintiffs' use and enjoyment of their property. Such substantial and unreasonable interference includes, but is not limited to:

> a. the annoyance and inconvenience of cleaning, scrubbing, and washing particulates off of Plaintiffs' homes, vehicles, outdoor furniture, other real and personal property;
>
> b. costs and expenses incurred for cleaning, scrubbing, and washing particulates off of Plaintiffs' homes, vehicles, outdoor furniture, other real and personal property;
>
> c. loss of use and inability to enjoy the outside areas of Plaintiffs' property due to the presence of noxious odors and air particulates, including but not limited to: inability to open up windows and doors and being forced to remain indoors;
>
> d. diminution in the value of Plaintiffs' property; and
>
> e. annoyance and inconvenience, including but not limited to, being woken up in the middle of the night by noxious odors, enduring noxious odors, the inability to invite guests to Plaintiffs' residences,

17

the inability to open up doors or windows, the inability to sit on front porch or outdoor patios, and the inability to entertain guests outdoors.

58.     The Defendant's substantial and unreasonable interference with Plaintiffs' use and enjoyment of their property constitutes a nuisance for which Defendant is liable to Plaintiffs for all damages arising from such nuisance, including compensatory, and injunctive, relief.

**COUNT THREE**
**NEGLIGENCE AND/OR GROSS NEGLIGENCE**

59.     Plaintiffs restate the allegations set forth in all previous paragraphs of this Complaint as if fully rewritten herein.

60.     Defendant has a duty to Plaintiffs to limit emissions from the paper mill by properly and adequately constructing, maintaining, and operating the paper mill in such a manner that noxious odors and air particulates do not enter and settle onto Plaintiffs' homes, land, and properties.

61.     On occasions too numerous to mention, Defendant breached its duties when it negligently and improperly constructed, maintained, and/or operated the paper mill in that the paper mill caused noxious odors and air particulates to enter and settle onto Plaintiffs' homes, land, and properties.  These failures to reasonably repair and/or maintain and/or operate its facility include, but are not limited to:

     a.     failures of Defendant's pollution control technology to limit emissions from its Lime Kiln;

     b.     inadequate installation, operation, and maintenance, of Defendant's emission units to properly control the release of non–condensable

gases (NCG's);

c.     various equipment failures of Defendant's emission units; and

d.     failures of Defendant's Evaporator System and Low Volume High Concentration System to reduce the concentration levels of its emissions.

62.     As a direct and proximate result of Defendant's negligence and gross negligence in constructing, maintaining, and/or operating, the facility, Plaintiffs' property, on occasions too numerous to mention, were physically invaded by noxious odors and air particulates.

63.     As a further direct and proximate result of the foregoing conduct of Defendant, Plaintiffs suffered physical damages to their property as alleged herein. Such physical damage includes, but is not limited to:

a.     costs and expenses incurred for cleaning, scrubbing, and washing particulates off of Plaintiffs' homes, vehicles, outdoor furniture, other real and personal property; and

b.     diminution in the value of Plaintiffs' property.

64.     By failing to properly construct, maintain and/or operate its paper mill, Defendant failed to exercise its duty of ordinary care and diligence so that noxious odors and air particulates would not invade Plaintiffs' property.

65.     By failing to construct, maintain and/or operate its paper mill, Defendant has caused the invasion of Plaintiffs' property by noxious odors and air particulates. Such failures, include, but are not limited to:

a.     failures of Defendant's pollution control technology to limit

19

emissions from its Lime Kiln;

b.       inadequate installation, operation, and maintenance of Defendant's emission units to properly control the release of non–condensable gases (NCG's);

c.       various equipment failures of Defendant's emission units; and

d.       failures of Defendant's Evaporator System and Low Volume High Concentration System to reduce the concentration levels of its emissions into the atmosphere.

66.     Defendant knowingly breached its duty to exercise ordinary care and diligence when it improperly constructed, maintained, and/or operated, the paper mill and knew, or should have known upon reasonable inspection, that such actions would cause Plaintiffs' property to be invaded by noxious odors and air particulates. As a direct and proximate result of the failure of Defendant to exercise ordinary care, Plaintiffs' residences were physically invaded by noxious odors and air particulates.

67.     Defendant's conduct in knowingly allowing conditions to exist, which caused noxious odors and air particulates to physically invade Plaintiffs' property, constitutes gross negligence as it demonstrates a substantial lack of concern for whether an injury resulted to Plaintiffs.

68.     Defendant's gross negligence was malicious and made with a conscious disregard for the rights and safety of Plaintiffs, which entitles Plaintiffs to an award of compensatory relief.

15696317.1

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Class, pray for judgment as follows:

A.    Certification of the proposed Class pursuant to Federal Rule of Civil Procedure 23;

B.    Designation of Plaintiffs as representatives of the proposed Class and designation of their counsel as Class Counsel;

C.    Judgment in favor of Plaintiffs and the Class Members and against Defendant;

D.    Award Plaintiffs and the Class Members compensatory damages, including pre-judgment and post-judgment interest thereupon;

E.    An Order holding that entrance of the aforementioned noxious odors and air particulates upon Plaintiffs' property constituted a nuisance;

F.    Award attorney fees and costs;

G.    Such further relief as the Court deems just and proper.

Dated: March 29, 2016                    Respectfully submitted,

                                          s/ Victoria L. Nilles
                                         Victoria L. Nilles (0076616)
                                           Trial Attorney
                                         TAFT STETTINIUS & HOLLISTER LLP
                                         40 North Main Street, Suite 1700
                                         Dayton, Ohio 45423-1029
                                         Tel: 937.228.2838
                                         Fax: 937.228.2816
                                         vnilles@taftlaw.com

15696317.1

Steven D. Liddle, Esq.
Nicholas A. Coulson, Esq.
Brandon T. Brown, Esq.
LIDDLE & DUBIN PC
    *Pro Hac Vice Motions to be submitted*
975 E. Jefferson Avenue
Detroit, Michigan 48207-3101
Tel: (313) 392-0015
Fax: (313) 392-0025
sliddle@ldclassaction.com
ncoulson@ldclassaction.com
bbrown@ldclassaction.com

*Attorneys for Plaintiffs*

15696317.1

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

Dated: March 29, 2016                    Respectfully submitted,

  s/ Victoria L. Nilles
Victoria L. Nilles (0076616)
   Trial Attorney
TAFT STETTINIUS & HOLLISTER LLP
40 North Main Street, Suite 1700
Dayton, Ohio 45423-1029
Tel: 937.228.2838
Fax: 937.228.2816
vnilles@taftlaw.com

Steven D. Liddle, Esq.
Nicholas A. Coulson, Esq.
Brandon T. Brown, Esq.
   *Pro Hac Vice Motions to be submitted*
LIDDLE & DUBIN PC
975 E. Jefferson Avenue
Detroit, Michigan 48207-3101
Tel: (313) 392-0015
Fax: (313) 392-0025
sliddle@ldclassaction.com
ncoulson@ldclassaction.com
bbrown@ldclassaction.com

*Attorneys for Plaintiffs*

23